UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Deborah Diede, | |
| Plaintiff, | COMPLAINT |
| v. | |
| City of Eau Claire, | Case No. 17 CV 261 |
| Defendant. | |

Plaintiff, Deborah Diede, by and through her attorneys, Bakke Norman, S.C., by Peter M. Reinhardt, states and complains of Defendant, City of Eau Claire, as follows:

## PARTIES

1. Plaintiff, Deborah Diede, is an adult resident of the State of Wisconsin residing at 13480 Cty Hwy S-South, Jim Falls, Wisconsin.

2. Defendant, City of Eau Claire, is a governmental unit organized and existing under Chapter 62 of the Wisconsin Statutes. Its principal place of business is located at 203 S. Farwell St., Eau Claire, Wisconsin.

3. Defendant, City of Eau Claire, is an employer as that term is defined in 29 U.S.C. § 2611(4).

4. Defendant, City of Eau Claire, receives federal funding for some of its programs.

5. Programs the City of Eau Claire receives federal financial assistance for include, but are not limited to, the City's housing division, home programs, public transportation and bike and pedestrian plans. Such programs are programs or activities within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 794(b).

6. The City of Eau Claire qualifies as a receiver of federal financial assistance because it

1

receives funds for the above-identified programs, as well as other programs. Accordingly, it is a covered employer under the Rehabilitation Act of 1973.

## NATURE OF ACTION

7. Plaintiff, Deborah Diede, claims the Defendant, City of Eau Claire, discriminated against her in the terms and conditions of employment based on disability and failed to accommodate her disability in violation of 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(1) – (b)(7), and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

8. Plaintiff Diede filed a discrimination complaint with the Equal Rights Division on April 13, 2015, which was cross-filed with the EEOC, Case No. 26G201500677C.

9. Plaintiff Diede received a Notice of Right to Sue with respect to the complaint identified in paragraph 8 hereof on January 12, 2017.

## JURISDICTION & VENUE

10. Jurisdiction in this court is proper as this case presents federal questions and controversy. Venue in the Western District of Wisconsin is appropriate because the conduct giving rise to Plaintiff's claims occurred in this district.

## ALLEGATIONS

11. Plaintiff Diede began working for Defendant in November, 1992, as a telecommunicator for the City of Eau Claire Police Department at its Emergency Communication Center.

12. From 1992 through 2014, Plaintiff met or exceeded the performance expectations of her employment position as telecommunicator.

13. During the spring of 2014, Defendant's Communication Center was remodeled resulting in a significant change in overhead lighting. Specifically, the majority of the lighting in the remodeled center was provided by fluorescent lighting.

14. Prior to the remodel, florescent lights in the Communication Center were not used or

2

were used minimally. In addition, telecommunicators were able to control the exposure to fluorescent lighting at their work stations.

15. After the lighting change, Complainant began to suffer, almost daily, from debilitating headaches. In an attempt to lessen the severe headaches, in the fall of 2014 Plaintiff Diede wore hats, sunglasses and/or visors while at work.

16. In December of 2014, Plaintiff Diede was diagnosed as suffering from migraine headaches. Plaintiff's migraines were triggered by Plaintiff's exposure to fluorescent lights in her work area.

17. Plaintiff Diede's Return to Work note, dated December 10, 2014, from the Marshfield Clinic, states as follows:

> Due to migraines triggered by light, Deb needs to be allowed to use sunglasses or hat or other devices (i.e. netting, antiglare products, umbrella) to prevent direct light exposure to her work area.

18. Also in December of 2014, the Director of the Communication Center informed Plaintiff Diede of a new uniform policy going into effect the first of the year prohibiting wearing of hats, sunglasses or visors without doctor approval.

19. At the same time, in December of 2014, the Director informed Plaintiff of a new lighting policy effective December 18, 2014. The new policy required that the overhead florescent lights in the Communication Center would remain on at all times.

20. In early January of 2015 Plaintiff Diede was issued a prescription from a neurologist, Dr. Adriana Kori, allowing Plaintiff to wear a visor and/or sunglasses while at work.

21. As Plaintiff continued to suffer from incapacitating headaches while at work, on January 18, 2015 she sent an e-mail to the Director requesting an exception to the lighting policy. She was not granted an exception to the lighting policy.

22. The following day, on January 19, 2015, Plaintiff Diede completed a Report of Injury

with respect to the migraines she had been suffering since the summer of 2014 from the florescent lights. The narrative portion of the Report of Injury, states as follows:

> Since mid-July lights (overhead) have been on occasionally. Migraine headaches started after that and have gotten much worse since the new lighting was installed and lighting policy has mandated overhead lights must be on at all times. I have discussed this with supervisors Chris Mattson & Dena Clark on several occasions – I don't have specific dates at this time.

23. In early February of 2015, Plaintiff Diede obtained work restrictions, from her physician, specifying that fluorescent lighting around her work space should be restricted.

24. During the month of February, 2015, Plaintiff engaged in extensive communications with the Director of the Communication Center and Defendant's Risk Manager regarding her migraines, the lighting issues at work, and requested accommodations.

25. As Plaintiff Diede continued to experience debilitating migraine headaches from the work lighting, she took sick leave, from work, from February 16, 2015 through February 20, 2015.

26. Prior to returning to work Plaintiff obtained a "Return to Work," from her physician with a restriction that stated, in part: "Any modification to reduce direct light exposure to workspace would help reduce migraine frequency."

27. On February 21, 2015, Plaintiff sent a memo to Defendant's Risk Manager suggesting six different reasonable accommodations.

28. Defendant rejected the majority of the requested reasonable accommodations and did not propose any alternative accommodations.

29. Defendant made a second revision to its lighting policy on March 30, 2015, and a third revision on March 31, 2015, which increased Plaintiff's exposure to fluorescent lighting and further exacerbated and aggravated Plaintiff's migraine headaches.

30. From late February of 2015, until April 30, 2015, Plaintiff Diede worked intermittently at

4

the Communication Center and was on FMLA, intermittently, due to her continued suffering from migraines.

31. In April of 2015, Defendant required Plaintiff to undergo a Fitness for Duty Evaluation at St. Joseph's Hospital.

32. The Fitness for Duty Evaluation commissioned by Defendant recommended, among other things, the following accommodations: adding fluorescent lighting filters to existing fluorescent lights; changing the lighting completely; moving the employee to a private area to allow for personal adjustment to appropriate lighting; and allowing tele-work.

33. Defendant declined the majority of the accommodations recommended by the Fitness for Duty Evaluation it commissioned.

34. During 2015, Plaintiff and/or her physicians submitted additional letters, work restrictions and requests for accommodations to Defendant, which Defendant refused to follow or grant.

35. Plaintiff Diede has not returned to her position as telecommunicator since April 30, 2015, due to Defendant's failure to provide reasonable accommodations for her disability.

36. Plaintiff also requested that she be allowed to transfer to open or vacant positions with Defendant. Defendant's initial response was to allow Plaintiff to compete for these positions, which she was already entitled to do.

37. At all relevant times, Defendant's actions and omissions were attended by a willful disregard of her federally protected rights and interests.

### FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION
(Violation of 42 U.S.C. § 12112(b)(5) and 29 U.S.C. § 794)

38. Plaintiff realleges and incorporates all previous paragraphs.

39. At all relevant times, Plaintiff Diede was a qualified individual with a disability.

40. At all relevant times, Plaintiff Diede could perform the essential functions of the telecommunicator position, with or without reasonable accommodations.

41. Defendant failed to make reasonable accommodations for Plaintiff Diede, which failure constitutes a violation of 42 U.S.C. § 12112(b)(5) and 29 U.S.C. § 794.

42. Plaintiff Diede has suffered pecuniary loss and harm as a result of Defendant's conduct.

43. Plaintiff Diede has suffered and continues to suffer emotion distress and physical pain and suffering as a result of Defendant's conduct.

## SECOND CAUSE OF ACTION
### DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT
(Violation of 42 U.S.C. § 12112(a) and § 12112(b) and 29 U.S.C. § 794)

44. Plaintiff Diede realleges and incorporates all previous paragraphs.

45. Defendant discriminated against Plaintiff Diede in the terms and conditions of her employment based on her disability.

46. Plaintiff Diede's disability was a motivating factor in Defendant's employments decisions and actions and inactions described herein.

47. Defendant's conduct was a violation of 42 U.S.C. § 12112(a) and § 12112(b) and 29 U.S.C. § 794.

48. Plaintiff Diede has suffered and continues to suffer pecuniary harm and emotional injury as a result of Defendant's discrimination.

WHEREFORE, Plaintiff Diede respectfully requests the following relief:

A. Compensatory Damages;

B. Back Pay;

C. Reinstatement or front pay in lieu thereof;

D. Prejudgment Interest;

E. A cease and desist order;

F. Appropriate injunctive relief;

G. Attorney's fees and costs; and

H. Such other further relief as the Court deems appropriate

**A JURY TRIAL IS DEMANDED**

Dated: 4/7/17

BAKKE NORMAN, S.C.

By: *[signature]*

Peter M. Reinhardt
Attorney No. 1025187
2919 Schneider Avenue SE, P.O. Box 280
Menomonie, WI 54751-0280
(715) 235-9016
preinhardt@bakkenorman.com

Attorneys for Deborah Diede